UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | |
|---|---|
| PENNEAST PIPELINE COMPANY, LLC, | : |
| | : |
| | : DOCUMENT ELECTRONICALLY FILED |
| Plaintiff, | : |
| | : |
| v. | : Hon. BRIAN R. MARTINOTTI, |
| | : U.S.D.J. |
| A PERMANENT EASEMENT FOR 1.74 | : |
| ACRES ± AND TEMPORARY EASEMENT FOR | : CIVIL ACTION |
| 2.24 ACRES ± IN HOPEWELL TOWNSHIP, | : |
| MERCER COUNTY, NEW JERSEY, TAX | : Civ. Action No.: |
| PARCEL NO. 1106-92-2.011 | : See Exhibit A |
| | : |
| RENZE WEN, JERSEY CENTRAL POWER & | : |
| LIGHT COMPANY, STATE OF NEW JERSEY, | : RETURN DATE: 2/19/2019 |
| BY THE SECRETARY OF THE DEPARTMENT | : |
| OF AGRICULTURE, STATE AGRICULTURE | : |
| DEVELOPMENT COMMITTEE, THE TOWNSHIP | : |
| OF HOPEWELL, FIRST CHOICE BANK; | : |
| | : |
| AND ALL UNKNOWN OWNERS, | : |
| | : |
| | : |
| Defendants. | : |

STATE DEFENDANTS BRIEF IN SUPPORT OF MOTION FOR STAY PENDING
APPEAL

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Attorney for State Defendants
Division of Law
R.J. Hughes Justice Complex
P.O. Box 093
Trenton, New Jersey 08625-0112
(609) 376-2803 (phone)
(609) 341-5030 (fax)
mark.collier@law.njoag.gov

Mark Collier (MC6192)
Deputy Attorney General
    On the Brief

## EXHIBIT A

**Dkt. No.**      **Case Name**

```
18-01684 PennEast Pipeline Company, LLC vs. 1.74 acres
18-01774 PennEast Pipeline Company, LLC vs. 0.26 acres
18-01603 PennEast Pipeline Company, LLC vs. 2.14 acres
18-01699 PennEast Pipeline Company, LLC vs. 1.41 acres
18-01709 PennEast Pipeline Company, LLC vs. 2.35 acres
18-01670 PennEast Pipeline Company, LLC vs. 1.29 acres
18-01682 PennEast Pipeline Company, LLC vs. 0.01 acres
18-01638 PennEast Pipeline Company, LLC vs. 0.57 acres
18-01701 PennEast Pipeline Company, LLC vs. 1.06 acres
18-01689 PennEast Pipeline Company, LLC vs. 1.53 acres
18-01754 PennEast Pipeline Company, LLC vs. 1.86 acres
18-01756 PennEast Pipeline Company, LLC vs. 0.73 acres
18-01668 PennEast Pipeline Company, LLC vs. 0.03 acres
18-01743 PennEast Pipeline Company, LLC vs. 1.20 acres
18-01669 PennEast Pipeline Company, LLC vs. 1.29 acres
18-01778 PennEast Pipeline Company, LLC vs. 2.23 acres
18-01643 PennEast Pipeline Company, LLC vs. 2.11 acres
18-01721 PennEast Pipeline Company, LLC vs. 1.89 acres
18-01597 PennEast Pipeline Company, LLC vs. 1.92 acres
18-01672 PennEast Pipeline Company, LLC vs. 4.55 acres
18-01673 PennEast Pipeline Company, LLC vs. 1.93 acres
18-02014 PennEast Pipeline Company, LLC vs. 2.35 acres
18-01863 PennEast Pipeline Company, LLC vs. 2.21 acres
18-01974 PennEast Pipeline Company, LLC vs. 0.06 acres
18-01845 PennEast Pipeline Company, LLC vs. 0.26 acres
18-01855 PennEast Pipeline Company, LLC vs. 1.52 acres
18-01874 PennEast Pipeline Company, LLC vs. 2.62 acres
18-01905 PennEast Pipeline Company, LLC vs. 0.23 acres
18-01801 PennEast Pipeline Company, LLC vs. 0.01 acres
18-01869 PennEast Pipeline Company, LLC vs. 0.61 acres
18-01851 PennEast Pipeline Company, LLC vs. 0.06 acres
18-01859 PennEast Pipeline Company, LLC vs. 1.10 acres
18-01896 PennEast Pipeline Company, LLC vs. 3.07 acres
18-02003 PennEast Pipeline Company, LLC vs. 2.11 acres
18-01942 PennEast Pipeline Company, LLC vs. 0.94 acres
18-02001 PennEast Pipeline Company, LLC vs. 4.33 acres
18-01990 PennEast Pipeline Company, LLC vs. 0.48 acres
18-01973 PennEast Pipeline Company, LLC vs. 1.65 acres
18-01806 PennEast Pipeline Company, LLC vs. 1.12 acres
18-01938 PennEast Pipeline Company, LLC vs. 0.36 acres
18-01976 PennEast Pipeline Company, LLC vs. 0.54 acres
18-01995 PennEast Pipeline Company, LLC vs. 2.48 acres
```

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT.............................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY...................... 2

I.  LEGAL ARGUMENT: STATE DEFENDANTS ARE ENTITLED TO A STAY
PENDING APPEAL................................................ 4

    A.  Likelihood of Success on the Merits.................. 6

    B.  Irreparable Injury.................................... 10

    C.  Harm to the nonmoving parties........................ 16

    D.  The Public Interest.................................. 18

CONCLUSION........................................................ 18

i

## TABLE OF AUTHORITIES

PAGE

### CASES

Alden v. Me., 527 U.S. 706, (1999) . . . . . . . . . . . . . 9

Al Falah Ctr. v. Twp. of Bridgewater, 2013 U.S. Dist. LEXIS
   190076 (D.N.J. September 30, 2013) . . . . . . . . . . . . 11

Amoco Prod. Co. v. Village of Gambell,
   480 U.S. 531 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Blatchford v. Native Village of Noatak, 501 U.S. 775 (1991) 6 - 8

Didon v. Castillo, 838 F.3d 313(3rd Cir. 2016) . . . . . . . . . . . . . . . 5

Hess v. Port Authority Trans-Hudson Corporation,
   513 U.S. 30, 48 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261(1997). 11, 12

In Re PennEast Pipeline Company, LLC, No. 18-1585,
   slip op. at 24 (D.N.J. December 14, 2018) . . . . . . . . . . . . . . . . 4

Maryland v. King, 567 U.S. 1301 (2012) . . . . . . . . . . . . . . . . . . . . 16

Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236 (3d Cir.
   2011) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Natural Resources Defense Council v. Texaco Refining and
   Marketing, Inc., 906 F.2d 934 (3rd Cir. 1990) . . . . . . . . . . . . . 10

New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,
   434 U.S. 1345 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Nken v. Holder, 556 U.S. 418(2009). . . . . . . . . . . . . . 5

Novartis Consumer Health, Inc. v. Johnson & Johnson, Co.,
   290 F.3d 578 (3rd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 10

Porter v. Pa. Dep't of Corr., 2018 U.S. Dist.
   LEXIS 191485, 23 (W.D.Pa. November 8, 2018) . . . . . . . . . 5

Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993) ................................... 11

Reilly v. City of Harrisburg, 858 F.3d 173 (3rd Cir 2017) ...... 5

Sabine Line v. A Permanent Easement of 4.25 +/ Acres of Land in Orange County, Tex., et al., 327 F.R.D. 116 (E.D.Tex. 2017) .. 8

South Camden Citizens in Action v. N.J. Dep't of Envt'l Prot., 145 F. Supp. 2d 446(D.N.J. 2001) .......................... 10

Winter v. NRDC, Inc., 555 U.S. 7 (2008)...................... 5

## STATE CONSTITUTION

N.J. Const. art. VIII, § 22, ¶ 6............................. 13

N.J. Const. art. VIII, § 22, ¶ 7 ........................... 13

## STATE STATUTES

N.J.S.A. 4:1C-1 to -10...................................... 15

N.J.S.A. 4:1C-4(a).......................................... 15

N.J.S.A. 4:1C-11............................................ 15

N.J.S.A. 4:1C-12(a)......................................... 15

N.J.S.A. 4:1C-32............................................ 15

N.J.S.A. 13:8A-1............................................ 14

N.J.S.A. 13:8C-1............................................ 13

N.J.S.A. 13:8C-2............................................ 14

## FEDERAL STATUTES

15 U.S.C. 717............................................... 2

28 U.S.C. § 1362......................................... 7, 8

FEDERAL REGULATIONS

18 C.F.R. 157.20(b).............................................. 17

18 C.F.R. 385.2008.............................................. 17

## PRELIMINARY STATEMENT

State Defendants[1] respectfully request that this Court grant a stay pending appeal of the District Court's December 14, 2018 Order ("District Court Decision"), which exercised jurisdiction over New Jersey without its consent and granted PennEast Pipeline Company ("PennEast") an Order of Condemnation for multiple State Preserved Properties. In addition, the District Court Decision granted PennEast a preliminary injunction against New Jersey and its property interests, which allows PennEast immediate access and prohibits New Jersey from interfering. State Defendants filed Notices of Appeal to the Third Circuit Court of Appeals on January 11, 2019.

State Defendants believe that the appeal will be successful because New Jersey is immune from suit under Eleventh Amendment sovereign immunity principles. In other words, State Defendants believe this Court lacked jurisdiction to adjudicate New Jersey's real property interests and issue an injunction against the State with respect to those properties. State Defendants believe the District Court Decision overlooks a United States Supreme Court

---

[1] "State Defendants" refers to the State of New Jersey, New Jersey Department of Environmental Protection, State Agriculture Development Committee, Delaware & Raritan Canal Commission, New Jersey Department of the Treasury, New Jersey Department of Transportation, New Jersey Water Supply Authority, and the New Jersey Motor Vehicle Commission, each of which has been named as a Defendant in one or more of the Condemnation Actions.

1

case that made clear Congress cannot delegate to private citizens, or private entities such as PennEast, the United States' exemption from Eleventh Amendment restrictions.

Without a stay of the District Court Decision, New Jersey's sovereignty will be irreparably undermined, and the environmentally sensitive lands protected by the New Jersey's tax-supported open space and farmland preservation programs will be irreparably harmed. Further, PennEast will not suffer any tangible harm should this Court issue the requested stay and the public interest certainly favors that the stay be issued.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY[2]

On January 19, 2018, the Federal Energy Regulatory Commission ("FERC") issued an Order granting Plaintiff, PennEast Pipeline Company ("PennEast" or "Plaintiff") a Certificate of Public Convenience and Necessity ("CPCN") pursuant to Section 7(c) of the Natural Gas Act ("NGA"), 15 U.S.C. 717 et seq. to construct and operate a new natural gas pipeline in Pennsylvania and New Jersey ("Project").

In February 2018, PennEast filed with this court individual Notices of Condemnation ("Notice of Condemnation") and Verified Complaints in Condemnation ("Complaint") for 131 separate

---

[2] State Defendants incorporate by reference the STATEMENT OF FACTS AND PROCEDURAL HISTORY set forth in State Defendants' Brief Seeking Dismissal and in Opposition to Preliminary Injunction Application filed on March 20, 2018.

properties (collectively "Condemnation Actions"). Of those properties, State Defendants hold property rights to approximately 40 parcels as permanently preserved for recreational, conservation and/or agricultural uses ("State Preserved Properties"). Through the Condemnation Actions, PennEast sought to condemn permanent and temporary rights-of-way over and through the State Preserved Properties as well as a preliminary injunction for immediate access to those properties.

On February 15 and 23, 2018, upon review of PennEast's application, U.S.D.J. Brian Martinotti signed individual Orders To Show Cause ("OTSC") directing State Defendants to show cause why an Order should not be entered granting PennEast's applications. On March 20, 2018, State Defendants submitted opposition papers that sought dismissal of the Condemnation Actions on multiple grounds, chief among them that State Defendants were immune from suit under Eleventh Amendment sovereign immunity principles. OTSC Hearings were held on April 5, 19 and 26, 2018.

On December 14, 2018, U.S.D.J. Martinotti issued the District Court Decision denying State Defendants request for dismissal and granting PennEast's application for orders of condemnation and for preliminary injunctive relief allowing immediate possession of the State Preserved Properties in advance of any award of just compensation. Specifically, the District Court Decision held that Eleventh Amendment immunity did not apply because PennEast "has

3

been vested with the federal government's eminent domain powers and stands in the shoes of the sovereign." In Re PennEast Pipeline Company, LLC, No. 18-1585, slip op. at 24 (D.N.J. December 14, 2018).

On December 28, 2018, State Defendants filed a Motion for Reconsideration of the District Court Decision, returnable on January 22, 2019. Concurrently, State Defendants filed a Motion for Stay Pending Reconsideration, also returnable on January 22, 2019. PennEast opposed both Motions. On January 11, 2019, State Defendants filed Notices of Appeal to the Third Circuit Court of Appeals in 42 Condemnation Actions that named at least one State of New Jersey entity as a defendant. On January 23, 2019, Judge Martinotti issued an Order denying both the State Defendants' Motion for Reconsideration and the Motion for Stay Pending Reconsideration.

## LEGAL ARGUMENT

I.  ## STATE DEFENDANTS ARE ENTITLED TO A STAY PENDING APPEAL

State Defendants satisfy the traditional stay factors. When considering a stay application, district courts consider the following four factors:

> (1) whether the stay applicant has made a
> strong showing that he is likely to succeed on
> the merits; (2) whether the applicant will be
> irreparably injured absent a stay; (3) whether
> issuance of the stay will substantially injure
> the other parties interested in the

4

proceeding; and (4) where the public interest lies. Didon v. Castillo, 838 F.3d 313, 319 n. 12(3rd Cir. 2016)

"In contrast to an injunction, 'a stay operates upon the judicial proceeding itself. It does so either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability.'" Porter v. Pa. Dep't of Corr., 2018 U.S. Dist. LEXIS 191485, 23 (W.D.Pa. November 8, 2018)(quoting Nken v. Holder, 556 U.S. 418, at 428(2009)). According to the U.S. Supreme Court in Nken:

> A stay pending appeal certainly has some functional overlap with an injunction, particularly a preliminary one. Both can have the practical effect of preventing some action before the legality of that action has been conclusively determined But a stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct. A stay simply suspend[s] judicial alteration of the status quo, while injunctive relief grants judicial intervention that has been withheld by lower courts. Nken, supra, 556 U.S. at 428-429.

"District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" Reilly v. City of Harrisburg, 858 F.3d 173 (3rd Cir 2017)(quoting Winter v. NRDC, Inc., 555 U.S. 7, 24 (2008)).

State Defendants satisfy these criteria and were wrongly denied dismissal by the district court. Allowing the District Court Decision to stand dramatically undermines New Jersey's

sovereignty as well as its open space and farmland preservation programs. There is no harm to PennEast should this limited stay be issued, and the public interest certainly favors avoiding the undermining of Eleventh Amendment sovereign immunity principles as well as any unnecessary disruption of New Jersey's tax-supported open space and farmland preservation programs. As such, State Defendants are entitled to a stay pending appeal.

A. **Likelihood of Success on the Merits**[3]

State Defendants are likely to succeed on the merits because the District Court Decision cannot be reconciled with United States Supreme Court cases that have made clear Congress cannot delegate to private citizens, or private entities such as PennEast, the United States' sovereign exemption from Eleventh Amendment restrictions.

Specifically, the conclusion that PennEast, a private entity, stands in the shoes of the Federal Government, fully delegated with the federal government's ability to bring suit against New Jersey overlooks the United States Supreme Court's decision in Blatchford v. Native Village of Noatak, 501 U.S. 775 (1991). In Blatchford, Alaska Native villages brought suit against an Alaskan state official, seeking an order requiring payment to them of money

---

[3] State Defendants incorporate the arguments set forth in State Defendants' Brief in Support of Motion for Reconsideration filed with this Court on December 28, 2018.

6

allegedly owed under a state revenue-sharing statute. The matter turned on whether the Eleventh Amendment acted as a bar to such a suit. The Alaska Native villages argued the federal government had delegated its authority to bring suit against a state in federal court to the tribes through a federal jurisdictional statute, 28 U.S.C. § 1362. Blatchford, supra, 501 U.S. at 783. In other words, they argued that Eleventh Amendment immunity was inapplicable to their lawsuit because the federal government was exempt from Eleventh Amendment restrictions and had delegated this exemption to the tribes. Ibid.

The Court disagreed, first reiterating long-established precedent that:

> the [s]tates entered the federal system with their sovereignty intact, that the judicial authority in Article III is limited by this sovereignty, … and that a [s]tate will therefore not be subject to suit in federal court unless it has consented to suit, either expressly or in the "plan of the convention". Id., at 779 (citations omitted).

Moreover, the states' surrender of sovereign immunity in the plan of the [Constitutional] convention has been recognized "in only two contexts: suits by sister States … and suits by the United States." Id., at 782 (citations omitted).

Blatchford rejects the Alaska Native villages' specific argument that the federal government's exemption from Eleventh Amendment restrictions had been delegated to them.   The Court

explained that consent to suit by the United States is <u>not</u> consent to suit by anyone whom the United States might select. <u>Id.</u> at 785. Additionally, consent to suit by the United States for a particular person's benefit is <u>not</u> consent to suit by that person. <u>Id.</u> Indeed, the Court doubted that the United States can delegate its sovereign exemption to Eleventh Amendment immunity. <u>Id.</u> Referring to respondents' "delegation theory" as "a creature of [Alaska Native villages'] own invention", the Court dismissed the argument as beyond what Congress could have contemplated when it enacted 28 U.S.C. § 1362.

Here, what would allow the federal government to bring New Jersey into court and condemn its lands is not the federal government's eminent domain authority, but rather, the consent or exemption the otherwise sovereign states like New Jersey gave to the federal government when ratifying the Constitution. See <u>Sabine Line v. A Permanent Easement of 4.25 +/ Acres of Land in Orange County, Tex., et al.</u>, 327 F.R.D. 116, at 139-141 (E.D.Tex. 2017) (In condemnation action brought by a pipeline company under the NGA, district court expresses doubt on delegation theory, ultimately holding that NGA does not contain an express delegation). New Jersey, however, did not consent to suit by any private entity selected by the federal government or another state.

> A suit which is commenced and prosecuted against a State in the name of the United States by those who are entrusted with the

8

> constitutional duty to "take Care that the
> Laws be faithfully executed," U.S. Const.,
> Art. II, § 3, differs in kind from the suit of
> an individual: While the Constitution
> contemplates suits among the members of the
> federal system as an alternative to extralegal
> measures, the fear of private suits against
> nonconsenting States was the central reason
> given by the founders who chose to preserve
> the States' sovereign immunity. Suits brought
> by the United States itself require the
> exercise of political responsibility for each
> suit prosecuted against a State, a control
> which is absent from a broad delegation to
> private persons to sue nonconsenting States.

> Alden v. Me., 527 U.S. 706, at 755-756 (1999).

To rule otherwise would eviscerate Eleventh Amendment immunity. For instance, if the federal government is allowed to delegate its exemption to a private entity, it stands to reason that a state could do so as well (after all, States consented to suit by the federal government and sister states). Such reasoning, however, would allow a citizen of one state to sue another state in federal court without consent, a result at complete odds with the Eleventh Amendment. So yes, PennEast has been delegated the federal government's eminent domain authority but they have not been delegated the federal government's exemption to New Jersey's sovereign immunity protection, nor can they be according to Blatchford and Alden. Accordingly, even assuming the United States on behalf of PennEast can file suit against New Jersey in federal court, PennEast, itself, cannot do so.

9

Therefore, State Defendants believe that the appeal will be successful and the Condemnation Actions will be dismissed as to the State.

**B. Irreparable Injury**

The District Court Decision not only grants permanent and temporary property rights on the State Preserved Properties to PennEast, it permanently enjoins State Defendants from the full enjoyment of their property rights, all at the expense of New Jersey's sovereignty. Moreover, New Jersey will suffer irreparable harm to its open space and farmland preservation programs unless the District Court Decision is stayed.

To show irreparable injury, a party must demonstrate potential harm that cannot be redressed by a legal or equitable remedy following a trial. Novartis Consumer Health, Inc. v. Johnson & Johnson, Co., 290 F.3d 578, 595 (3rd Cir. 2002). Injury to the environment constitutes irreparable harm as it can seldom be adequately remedied by money damages and is often of permanent or at least of long duration. Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 545 (1987); see also Natural Resources Defense Council v. Texaco Refining and Marketing, Inc., 906 F.2d 934, 941 (3rd Cir. 1990); South Camden Citizens in Action v. N.J. Dep't of Envt'l Prot., 145 F. Supp. 2d 446, 499 (D.N.J. 2001). "On a more basic level, 'where interests involving real property are at stake, preliminary injunctive relief can be particularly

appropriate because of the unique nature of the property interest.'" Al Falah Ctr. v. Twp. of Bridgewater, 2013 U.S. Dist. LEXIS 190076, at 62-63.(D.N.J. September 30, 2013)(quoting Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 256 (3d Cir. 2011)).

Here, the District Court Decision authorizes the condemnation and immediate possession of uniquely situated New Jersey preserved lands. So long as the District Court Decision remains in effect, this Court exercises jurisdiction over New Jersey and its lands without its consent. The Eleventh Amendment to the United States Constitution bars such jurisdiction. As such, the District Court Decision undermines New Jersey sovereignty, which alone constitutes irreparable harm.

The Eleventh Amendment does not exist solely in order to "preven[t] federal-court judgments that must be paid out of a State's treasury," Hess v. Port Authority Trans-Hudson Corporation, 513 U.S. 30, 48 (1994); it also serves to avoid "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties," Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146. (1993). Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997) is especially instructive here as it involved the adjudication of state-owned lands in federal court. The United States Supreme Court has held that Eleventh Amendment generally bars the adjudication

of state property interests without consent. Coeur d'Alene Tribe of Idaho, supra, 521 U.S. at 281-282. In doing so, the Supreme Court has underscored the harm experienced by a sovereign state when being forced to surrender itself and its lands to judicial process without consent.

It is that particular type of harm or indignity that New Jersey is being subjected to right now so long as the District Court Decision remains in effect. At its core, the District Court Decision takes sticks out of New Jersey's property rights bundle and gives them to a private entity without New Jersey's consent. Those sticks include fee interests and negative easements that prohibit the very development that PennEast seeks to undertake on the State Preserved Properties. This deprivation would cause harm even without the introduction of the sovereign immunity issue. When the property owner is a sovereign state such as New Jersey, these harms are magnified even further.

The District Court Decision's underpinnings present substantial constitutional issues regarding New Jersey's sovereign immunity. As such, the District Court Decision should be stayed to prevent any additional harm to New Jersey's sovereign interests.

In addition to the harm New Jersey will suffer to its very sovereignty being subjected to judicial process at the hands of PennEast, New Jersey's long-standing open space and farmland preservation programs will also be unnecessarily and irreparably

injured. As State Defendants pointed out in their opposition to PennEast's applications, the State of New Jersey is the most densely populated state in the United States. Open space is under constant development pressure, making open space and farmland scarce resources. For a period spanning more than six decades, New Jersey citizens have voted to support and the State of New Jersey has spent billions of taxpayer dollars permanently preserving preciously scarce, unique undeveloped lands for recreation, conservation and farmland uses.

State Defendants have consistently used monies approved by the voters under the New Jersey Constitution to purchase permanent preservation interests. N.J. Const. art. VIII, § 22, ¶ 6 & 7. In 1998, New Jersey voters approved a Constitutional Amendment that created New Jersey's first stable source of funding for open space, farmland, and historic preservation efforts from the State Sales and Use Tax. N.J. Const. art. VIII, § 22, ¶ 7. In 2014, New Jersey voters again amended the Constitution to provide added funding for open space and farmland preservation, this time from part of the State's Corporate Business Tax. N.J. Const. art. VIII, § 22, ¶ 6.

New Jersey's dedication towards open space and farmland preservation is reflected in several statutory provisions and bond issuances. In the Garden State Preservation Trust Act, N.J.S.A. 13:8C-1, et seq. ("GSPTA"), the New Jersey Legislature found:

… that the acquisition and preservation of open space, farmland, and historic properties in New Jersey protects and enhances the character and beauty of the State and provides its citizens with greater opportunities for recreation, relaxation, and education; *that the lands and resources now dedicated to these purposes will not be adequate to meet the needs of an expanding population in years to come.* . .

The Legislature further finds and declares that the citizens of the State have indicated their very strong support for open space, farmland, and historic preservation efforts not only in the past approval of State Green Acres bond acts and numerous county and municipal dedicated funding sources for those purposes, but most recently in 1998 with the approval of an amendment to the New Jersey Constitution that provides for a stable and dedicated source of funding for those purposes for the next decade and beyond.

The Legislature therefore determines *that it is in the public interest to preserve as much open space and farmland, and as many historic properties, as possible* within the means provided by the 1998 constitutional amendment; that of the open space preserved, as much of those lands as possible shall protect water resources and preserve adequate habitat and other environmentally sensitive areas… N.J.S.A. 13:8C-2 (*emphasis added*).

To support these long-held State policies, New Jersey has maintained open space and farmland preservation programs within the NJDEP and SADC, respectively. The NJDEP's Green Acres program was created in 1961 to help the State acquire, and to assist local governments to acquire land for recreation and conservation. See N.J.S.A. 13:8A-1 et seq. Since 1961 the State's citizens have

approved all 13 Green Acres bond referendums, totaling $3.32 billion. Certification of Judeth Piccinini Yeany, at ¶6 (Hereinafter "Yeany Certification")[4]. As of August 2017, the Green Acres Program has preserved in perpetuity over 650,000 acres land in New Jersey. Id., at ¶8.

SADC was established in 1983 by the Right to Farm Act, N.J.S.A. 4:1C-1 to -10, to support farm operations. N.J.S.A. 4:1C-4(a). That same year, the Legislature passed the Agriculture Retention and Development Act ("ARDA"), which recognizes that "the agricultural industry and the preservation of farmland are important to the present and future economy of the State and welfare of [its] citizens[.]" N.J.S.A. 4:1C-12(a).

The ARDA authorized the SADC to preserve the dwindling amount of farmland throughout the State by purchasing farmland, purchasing development easements, and providing cost-share grants to counties, N.J.S.A. 4:1C-11, et seq., thereby preserving, in perpetuity, the lands for agricultural uses. N.J.S.A. 4:1C-32. As of 2017, SADC and its partners have preserved over 2,500 farms, comprising over 200,000 acres of preserved farmland. Certification of Susan E. Payne, at ¶6 (Hereinafter "Payne Certification")[5]. More

---

[4] To avoid duplication and unnecessarily add to an already voluminous record in these matters, State Defendants direct this Court to Docket No. 18-1684, Document #12-4 for a copy of this Certification.

[5] To avoid duplication and unnecessarily add to an already voluminous record in these matters, State Defendants direct this

than $1 billion of State monies have been committed to preserve farmland since the Farmland Preservation Program's inception. Ibid.

The condemnation by a private entity of these properties that have been preserved for open space and farmland preservation purposes, as mandated by the New Jersey Constitution and the Legislature, is an affront to the State Defendants' long-held policy initiatives. See Maryland v. King, 567 U.S. 1301 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (quoting New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1351 (1977)) As a result, premature condemnation and disturbance to these preserved and protected lands would significantly harm the State and its citizens and monetary damages would be inadequate.

**C. Harm to the nonmoving parties**

Balanced against the harms faced by New Jersey should the District Court Decision remain in effect, PennEast would not suffer any tangible harm were this Court to grant State Defendants motion for a stay pending appeal.

Moreover, as State Defendants set forth in their opposition to PennEast's preliminary injunction applications, there is no

---

Court to Docket No. 18-1684, Document #12-3 for a copy of this Certification.

16

reason to believe the FERC Order's in-service date could not be extended. FERC does not offer any substantive basis requiring construction completion within two years of the Order. See Exhibit B to Complaint[6], ¶219(B)(1) Further, neither the NGA nor FERC's own regulations require construction on interstate pipelines to be complete within two years, or any particular time of an Order. See 18 C.F.R. 157.20(b). Instead, FERC has the inherent authority to provide PennEast with more time to complete construction. Under FERC regulations, "the time by which any person is required or allowed to act under any statute, rule, or order may be extended … for good cause, upon a motion made before the expiration of the period prescribed or previously extended." 18 C.F.R. 385.2008.

Moreover, the fact that PennEast may have contractual obligations that could be impacted by this Court granting a stay is insufficient to defeat State Defendants' motion. Any contractual obligations are the product of PennEast's own choice to prematurely enter contracts before it had satisfied all conditions set by FERC in the CPCN, including all required

---

[6] For the purposes of this brief, and unless otherwise specifically noted, citation to "Complaint" shall refer to the Verified Complaint filed by Plaintiff for Docket No. 18-01603. At the same time, the arguments made herein are applicable to all of the Condemnation Actions in which the State of New Jersey and/or any of its arms or subdivisions have been named as a Defendant. This is being done because the Verified Complaints filed by PennEast for the Condemnation Actions are fairly uniform and for ease of the court's reference.

environmental permits. PennEast did not include any of its contracts to supply gas in the record for the Condemnation Actions and, as a result, the State Defendants have had no chance to review the contracts to determine whether those contracts require, without any exceptions, a particular service date. Further, any obligations PennEast might have with such contracts are PennEast's own doing and have nothing to do with the State Defendants. PennEast's self-created urgency should not be used to defeat a stay that would protect New Jersey's sovereignty pending a decision on the appeal.

### D. The Public Interest

The public interest favors a stay being issued pending a decision on State Defendants' appeal. As set forth more fully above, for decades, New Jersey citizens have voted to support and the State of New Jersey has spent billions of taxpayer dollars permanently preserving preciously scarce, unique undeveloped lands for recreation, conservation and farmland uses. These votes have been cast and the money spent to guard against the very sort of private development authorized by the District Court Decision. Issuing the stay pending resolution of State Defendants' appeal would be fully consistent with the public's interest.

<u>CONCLUSION</u>

For the reasons set forth herein, State Defendants request that this Court issue a stay of the District Court Decision pending

resolution of State Defendants' appeal in the Third Circuit Court of Appeals.


                    GURBIR S. GREWAL
                    ATTORNEY GENERAL OF NEW JERSEY


              By:  s/ Mark Collier
                    Mark Collier (MC6192)
                    Deputy Attorney General



DATED:    January 25, 2019