UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE

| | |
|---|---|
| PENNEAST PIPELINE COMPANY, LLC, : | |
| : | |
| :DOCUMENT ELECTRONICALLY FILED | |
| Plaintiff,           : | |
| : | |
| v.            : Hon. BRIAN R. MARTINOTTI, | |
| : U.S.D.J. | |
| A PERMANENT EASEMENT FOR 1.74    : | |
| ACRES ± AND TEMPORARY EASEMENT FOR :CIVIL ACTION | |
| 2.24 ACRES ± IN HOPEWELL TOWNSHIP, : | |
| MERCER COUNTY, NEW JERSEY, TAX    :Civ. Action No.: | |
| PARCEL NO. 1106-92-2.011      :See Exhibit A | |
| : | |
| RENZE WEN, JERSEY CENTRAL POWER &  : | |
| LIGHT COMPANY, STATE OF NEW JERSEY,: RETURN DATE: 2/19/2019 | |
| BY THE SECRETARY OF THE DEPARTMENT : | |
| OF AGRICULTURE, STATE AGRICULTURE  : | |
| DEVELOPMENT COMMITTEE, THE TOWNSHIP: | |
| OF HOPEWELL, FIRST CHOICE BANK;   : | |
| : | |
| AND ALL UNKNOWN OWNERS,       : | |
| : | |
| : | |
| : | |
| Defendants.        : | |

---

STATE DEFENDANTS REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR
STAY PENDING APPEAL

---

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Attorney for State Defendants
Division of Law
R.J. Hughes Justice Complex
P.O. Box 093
Trenton, New Jersey 08625-0112
(609) 376-2803 (phone)
(609) 341-5030 (fax)
mark.collier@law.njoag.gov

Mark Collier (MC6192)
Deputy Attorney General
    On the Brief

<u>EXHIBIT A</u>

<u>Dkt. No.</u>        <u>Case Name</u>

```
18-01684 PennEast Pipeline Company, LLC vs. 1.74 acres
18-01774 PennEast Pipeline Company, LLC vs. 0.26 acres
18-01603 PennEast Pipeline Company, LLC vs. 2.14 acres
18-01699 PennEast Pipeline Company, LLC vs. 1.41 acres
18-01709 PennEast Pipeline Company, LLC vs. 2.35 acres
18-01670 PennEast Pipeline Company, LLC vs. 1.29 acres
18-01682 PennEast Pipeline Company, LLC vs. 0.01 acres
18-01638 PennEast Pipeline Company, LLC vs. 0.57 acres
18-01701 PennEast Pipeline Company, LLC vs. 1.06 acres
18-01689 PennEast Pipeline Company, LLC vs. 1.53 acres
18-01754 PennEast Pipeline Company, LLC vs. 1.86 acres
18-01756 PennEast Pipeline Company, LLC vs. 0.73 acres
18-01668 PennEast Pipeline Company, LLC vs. 0.03 acres
18-01743 PennEast Pipeline Company, LLC vs. 1.20 acres
18-01669 PennEast Pipeline Company, LLC vs. 1.29 acres
18-01778 PennEast Pipeline Company, LLC vs. 2.23 acres
18-01643 PennEast Pipeline Company, LLC vs. 2.11 acres
18-01721 PennEast Pipeline Company, LLC vs. 1.89 acres
18-01597 PennEast Pipeline Company, LLC vs. 1.92 acres
18-01672 PennEast Pipeline Company, LLC vs. 4.55 acres
18-01673 PennEast Pipeline Company, LLC vs. 1.93 acres
18-02014 PennEast Pipeline Company, LLC vs. 2.35 acres
18-01863 PennEast Pipeline Company, LLC vs. 2.21 acres
18-01974 PennEast Pipeline Company, LLC vs. 0.06 acres
18-01845 PennEast Pipeline Company, LLC vs. 0.26 acres
18-01855 PennEast Pipeline Company, LLC vs. 1.52 acres
18-01874 PennEast Pipeline Company, LLC vs. 2.62 acres
18-01905 PennEast Pipeline Company, LLC vs. 0.23 acres
18-01801 PennEast Pipeline Company, LLC vs. 0.01 acres
18-01869 PennEast Pipeline Company, LLC vs. 0.61 acres
18-01851 PennEast Pipeline Company, LLC vs. 0.06 acres
18-01859 PennEast Pipeline Company, LLC vs. 1.10 acres
18-01896 PennEast Pipeline Company, LLC vs. 3.07 acres
18-02003 PennEast Pipeline Company, LLC vs. 2.11 acres
18-01942 PennEast Pipeline Company, LLC vs. 0.94 acres
18-02001 PennEast Pipeline Company, LLC vs. 4.33 acres
18-01990 PennEast Pipeline Company, LLC vs. 0.48 acres
18-01973 PennEast Pipeline Company, LLC vs. 1.65 acres
18-01806 PennEast Pipeline Company, LLC vs. 1.12 acres
18-01938 PennEast Pipeline Company, LLC vs. 0.36 acres
18-01976 PennEast Pipeline Company, LLC vs. 0.54 acres
18-01995 PennEast Pipeline Company, LLC vs. 2.48 acres
```

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT..............................................1
ARGUMENT

    I. THE DISTRICT COURT DECISION SHOULD BE STAYED.............1

        A.  State Defendants are likely to succeed on the
           Merits ...................................................1

           1. PennEast misunderstands the federal power of
              eminent domain. ................................2

           2. PennEast mistakenly downplays the significance
              of Supreme Court precedent .....................4

           3. New Jersey's sovereign immunity has not been
              abrogated ......................................8

        B.  Without a Stay, State Defendants will be
           Irreparably Harmed. .................................9

        C. Any Harm to PennEast is Overshadowed By Harm to
           State Defendants ...................................12

        D. PennEast's Pipeline Project Would Harm the Very
           Nature of These Public Lands ......................14

CONCLUSION........................................................15

TABLE OF AUTHORITIES

PAGE

CASES

American Express Travel Related Services Co, Inc. v.
  Sidamon-Eristoff, 755 F. Supp. 2d 556 (D.N.J. 2011) .......... 9


Alden v. Me., 527 U.S. 706, (1999),...................... 4, 5

Beers v. Ark., 61 U.S. 527 (1858)............................ 11

Blatchford v. Native Village of Noatak, 501 U.S. 775 (1991). 2, 5


Bowers v. NCAA, 188 F. Supp. 2d 473 (D.N.J. March 6, 2002).... 12


Chao v. Va. Dep't of Transp., 291 F.3d 276 (4th Cir. 2002)..... 6

Clean Air Council v. Mallory, 226 F. Supp. 2d 705
  (E.D. Pa. 2002) ................................................ 12


Cohen v. Beneficial Industrial Loan Corp.,
  337 U.S. 541 (1949) ........................................... 9


College Sav. Bank v. Florida Prepaid Post Secondary Educ.
  Expense Bd., 527 U.S. 666 (1999) ............................. 11

Columbia Gas Transmission, LLC v. 1.01 Acres,
  More or Less in Penn Twp., 768 F.3d 300
  (3d. Cir. 2014) ............................................... 13


Federal Ins. Co. v. Richard I. Rubin & Co., 12 F.3d 1270
  (3rd Cir. 1993)............................................. 9, 10


FMC v. S.C. State Ports Auth., 535 U.S. 743 (2002)............ 7


In re Flonase Antitrust Litig., 879 F.3d 61
  (3rd Cir. 2017)............................................... 10

ii

Pappan Enters. v. Hardee's Food Sys., 143 F.3d 800
  (3d Cir. 1998) ................................................ 13


Pennhurst State School Hosp. v. Halderman,
  465 U.S. 89 (1984) ........................................... 11

Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy,
  Inc., 506 U.S. 139 (1993) ................................ 9, 10

Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996)....... 8

State of Oklahoma v. Atkinson Co., 313 U.S. 508 n. 2 (1941).... 3

Tenn. Dep't of Human Servs. v. U.S. Dep't of Educ.,
  979 F.2d 1162 (6th Cir. 1992) ............................... 6

Transcon. Gas Pipe Line Co., LLC v. Permanent Easement
  for 2.59 Acres, 709 Fed. Appx. 109 (3d. Cir. 2017) ......... 13

United States ex rel. Foulds v. Texas Tech Univ.,
  171 F.3d 279 n.2 (5th Cir. 1999)............................. 7

United States v. Moats, 961 F.2d 1198 (5th Cir. 1992)...... 9, 10

United States v. Montana, 134 F.2d 194 (9th Cir. 1943)......... 3

Wayne County v. United States, 53 Ct. Cl. 417 (1918)........... 3

Wheeling & Ry. Co. v. Public Util. Comm'n, 141 F.3d 88 (3d Cir.
1998), cert. denied, 528 U.S. 928 (1999) ................... 11

**STATUTES**

15 U.S.C. § 717.............................................. 7

31 U.S.C. § 3729............................................. 7

## PRELIMINARY STATEMENT

The District Court Decision should be stayed pending New Jersey's appeal to the Third Circuit. The State has demonstrated a likelihood of success on the merits because jurisdiction is a threshold issue in these matters and Blatchford illustrates that the District Court Decision was incorrect when it found that the Eleventh Amendment was not applicable. The federal government cannot delegate its exemption to state sovereign immunity restrictions to a private actor under this nation's constitutional framework. As such, the District Court Decision should be stayed pending resolution of State Defendants' appeal to the Third Circuit. To do otherwise deprives the State of New Jersey of its constitutionally-protected sovereignty without its consent and at the hands of a private actor. This constitutes irreparable harm and tips the balance of harms in favor of the State.

## ARGUMENT

I.    THE DISTIRCT COURT DECISION SHOULD BE STAYED

A. State Defendants are Likely to Succeed on the Merits.

PennEast misunderstands both the scope of the federal power of eminent domain and the controlling nature of Blatchford. The Supreme Court has made clear that a private entity such as PennEast cannot stand in the shoes of the federal government for purposes of side-stepping the Eleventh Amendment. State Defendants are

1

likely to succeed on the merits of their appeal because the District Court Decision, as well as the ensuing denial of State Defendants' motion for reconsideration, fail to recognize this controlling precedent, resulting in the inappropriate exercise of jurisdiction over State Defendants.

1. **PennEast misunderstands the federal power of eminent domain.**

The federal power of eminent domain alone does not include the constitutional authority to bring a state into court without that state's consent. The "[s]tates entered the federal system with their sovereignty intact." Blatchford v. Native Village of Noatak, 501 U.S. 775, 779 (1991). States granted an exemption to the federal government and their sister states when ratifying the Constitution. Id., at 782. In light of that exemption the federal government can file suit against the state without violating the Eleventh Amendment. That exemption, however, cannot be delegated. Id., at 785. PennEast, in opposition to both the present motion as well as State Defendants' earlier reconsideration motion[1], conflates the delegation of the federal power of eminent domain with the delegation of the federal government's exemption to Eleventh Amendment restrictions. While the former is permitted,

---

[1] PennEast has explicitly incorporated its January 8, 2019 opposition to State Defendants' Motion for Reconsideration into their present opposition. (PennEast Br. at 12-13). Therefore, State Defendants address arguments raised in both.

the Supreme Court has expressly doubted the permissibility of the latter.

PennEast's misunderstanding of these concepts is evidenced by its reliance on inapplicable case law not involving delegation. The cases PennEast cites merely reinforce that the federal government can condemn state lands, which State Defendants do not contest. See State of Oklahoma v. Atkinson Co., 313 U.S. 508, 511 n. 2 (1941)(condemnation actions brought by the United States War Department); United States v. Montana, 134 F.2d 194 (9th Cir. 1943)(condemnation proceeding brought by the United States); Wayne County v. United States, 53 Ct. Cl. 417 (1918)(condemnation proceeding brought by the federal government). None of these cases involved delegation of the federal government's exemption from state sovereign immunity restrictions or a private party condemning state lands. And even if they did, each case predates Blatchford, which controls here.

PennEast's allusion to a Supremacy Clause violation is equally unavailing. If the federal government wanted to condemn state lands for the purpose of building a pipeline for the public good, it could do so itself without New Jersey's consent. What Blatchford says it cannot do is delegate that authority to a private actor. As discussed above, that is because the federal government's authority to file suit against a state does not stem

from its power of eminent domain. Instead, the federal government's authority to file suit against a state is rooted in states providing it with an exemption from their sovereign immunity.

The inference PennEast draws from the Federal Power Act and the Amtrak statute is flawed. That Congress chose to place limitations on the delegation of the power of eminent domain in those statutes is immaterial to whether Congress has the authority to delegate the federal government's exemption to Eleventh Amendment restrictions. Indeed, Congress lacks such power.

The District Court Decision determined that the Eleventh Amendment is not applicable to PennEast's condemnation of state lands because PennEast, a private for-profit entity, stood in the shoes of the federal government. Blatchford and Alden v. Me., 527 U.S. 706 (1999) contradict this finding.

In sum, the issue is not whether the federal government has in fact delegated eminent domain authority at the expense of the states. Rather, the issue is whether the federal government has the constitutional authority to delegate its exemption from state sovereign immunity restrictions. Blatchford says it does not.

## 2. PennEast mistakenly downplays the significance of Supreme Court precedent.

It is not surprising that PennEast tries to downplay the significance of Blatchford. Blatchford expressly doubts that

4

Congress has authority to delegate its exemption to the Eleventh Amendment restrictions. Blatchford, supra, 501 U.S. at 783. A few years later, the Court further explained why such authority does not exist. History, precedent and the structure of the Constitution make clear that, under the plan of the Convention, the States have consented to suits by the federal government on behalf of private citizens but have not consented to suit by private citizens. Alden, supra, 527 U.S. at 759-760.

The significance of Blatchford does not depend on whether the specific statute Blatchford analyzed was jurisdictional in nature or conferred any substantive right.[2] The "obstacle to suit" in Blatchford was the Constitution, not a statute. Blatchford, supra, 501 U.S. at 785]. Blatchford found that the federal government cannot, via any type of statute, delegate its exemption from state sovereign immunity protections to private actors such as PennEast.

When it comes to the constitutional issue of delegation, Blatchford is controlling. Unsurprisingly, PennEast is unable to point to a single case that says otherwise. In fact, they spend very little time in their opposition on this Supreme Court precedent, focusing instead on federal statutes such as the Federal Power Act and the finer points of consumer fraud jurisprudence.

_____

[2] In fact, the word "substantive" appears nowhere in the Supreme Court's opinion.

5

PennEast overlooks the significance of <u>Chao v. Va. Dep't of Transp.</u>, 291 F.3d 276 (4th Cir. 2002). <u>Chao</u> demonstrates that the distinction between the federal government suing a state and a private party suing a state is of constitutional import. Notably, suit against the State by a private party was barred by the Eleventh Amendment. <u>Id.</u>, at 281-282. Suit by the federal government, however, was not. <u>Ibid.</u> According to <u>Chao</u>, because the federal agency had brought the lawsuit itself, federal officials had taken "political responsibility" for it. As such, "it is precisely the sort of suit that has always been thought to fall within the Federal Government's exemption from state sovereign immunity." <u>Id.</u>, at 282. On the other hand, any lawsuit that the federal government does not feel is of sufficient national importance to bring itself is outside the scope of the federal government's exemption to state sovereign immunity, as per <u>Blatchford.</u> <u>Ibid.</u>

PennEast's analysis of <u>Tenn. Dep't of Human Servs. v. U.S. Dep't of Educ.</u>, 979 F.2d 1162, 1166 (6th Cir. 1992) is misguided. Therein, the Sixth Circuit analyzed the underlying Randolph Shepherd Act only after finding that the Eleventh Amendment was applicable. <u>Id.</u>, at 1167. In other words, the Sixth Court was analyzing abrogation to determine if the statue contained an unmistakably clear intention to abrogate state immunity. Further, the portion of the decision that allowed the arbitration award to

6

stand is no longer good law in light of FMC v. S.C. State Ports Auth., 535 U.S. 743 (2002). In FMC, the Supreme Court held that state sovereign immunity protections extended to administrative proceedings.

State Defendants acknowledge that there is a split in the Circuits regarding whether an individual can sue a state without consent under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. That said, it must be noted that the FCA requires that suits be filed "in the name of the Government." The Natural Gas Act ("NGA"), 15 U.S.C. § 717 et seq. contains no such requirement. Additionally, irrespective of whether the federal government chooses to intervene, any relief secured as a result of the litigation is shared between the individual and the federal government. United States ex rel. Foulds v. Texas Tech Univ., 171 F.3d 279, 282 n.2 (5th Cir. 1999)

Here, the PennEast lawsuits could not be more different as they are brought on behalf of a private actor, PennEast, not "in the name of the Government." Further, PennEast alone would own the permanent rights of way and ultimately profit from the building of the pipeline.

Blatchford controls the constitutional issue of delegation. The District Court Decision, however, fails to recognize Blatchford when deciding the threshold issue of jurisdiction over

7

State Defendants. Therefore, State Defendants are likely to succeed on the merits of their appeal.

### 3. New Jersey's sovereign immunity has not been abrogated.

With the Eleventh Amendment fully applicable to these cases, PennEast is unable to show how the NGA operates to abrogate New Jersey's constitutional sovereign immunity protections. Under Seminole Tribe of Florida v. Florida, 517 U.S. 44, 73 (1996), Commerce Clause legislation such as the NGA cannot abrogate state immunity. Even if it could, the NGA lacks the unambiguous plain language indicating such an intent.

Not surprisingly, PennEast fails to point to a single case where the general grant of eminent domain authority satisfies Seminole Tribe's unambiguous language requirement. Instead, PennEast focuses on drawing inappropriate inferences from statutes other than the NGA. That type of analysis is not warranted under Seminole Tribe, which requires Congressional intent to abrogate be "unmistakably clear in the language of the statute." Seminole Tribe of Florida, supra, 517 U.S. at 56 (emphasis added)(citation omitted). Without clear, unmistakable Congressional intent to abrogate in the language of the NGA, let alone the constitutional authority to do so under the Commerce Clause, New Jersey's sovereign immunity has not been abrogated.

**B. Without a Stay, State Defendants Will Be Irreparably Harmed.**

Harm to a state's sovereignty is an irreparable harm fully recognized by the Supreme Court. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 145 (1993). In fact, "an alleged constitutional infringement will often alone constitute irreparable harm." American Express Travel Related Services Co, Inc. v. Sidamon-Eristoff, 755 F. Supp. 2d 556, 614 (D.N.J. 2011). The harm to New Jersey's sovereignty is evidenced by the fact that State Defendants have an automatic right to appeal the District Court Decision under the collateral order doctrine despite there not being a final judgment in these cases.

Notably, the Supreme Court has held that denials of state sovereign immunity protection constitute extraordinary harm under the collateral order doctrine set forth in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949). Cohen "requires that there be a risk of important and probably irreparable loss … or, some showing of extraordinary harm." Federal Ins. Co. v. Richard I. Rubin & Co., 12 F.3d 1270, 1282 (3rd Cir. 1993); United States v. Moats, 961 F.2d 1198, 1201 (5th Cir. 1992).

In holding that decisions affecting state sovereign immunity were too important to relegate appeals therefrom to final judgments, the Supreme Court reasoned that "the value to the States of their Eleventh Amendment immunity … is for the most part lost

as litigation proceeds past motion practice." Puerto Rico Aqueduct & Sewer Auth., supra, 506 U.S. at 145. The main purpose of the Eleventh Amendment is "to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." Id., at 146. "[A]pplication of the collateral order doctrine in [a sovereign immunity] case is justified … [by] the importance of ensuring that the States' dignitary interests can be fully vindicated." Ibid.

Here, "the risk of harm from having to defend the lawsuit remains constant and is an irreparable loss" to State Defendants. Federal Ins. Co. v. Richard I. Rubin & Co., 12 F.3d 1270, 1282 (3rd Cir. 1993)(quoting United States v. Moats, 961 F.2d 1198, 1201 (5th Cir. 1992). "Sovereign immunity is an immunity from the burdens of becoming involved in any part of the litigation process, from pre-trial wrangling to trial itself." Moats, supra, 961 F.2d at 1203; See In re Flonase Antitrust Litig., 879 F.3d 61 (3rd Cir. 2017)("The Constitution requires more protections for States than for ordinary litigants not because of their sophistication but because of their status as sovereigns.")(citing Puerto Rico Aqueduct, supra, 506 U.S. at 146).

PennEast's argument that the failure to raise sovereign immunity as a defense in past pipeline cases cuts against raising it here misunderstands the concept of sovereign immunity.

10

Similarly, that New Jersey has mechanisms in place that account for the possibility of diversions or condemnations of State lands is not a waiver of New Jersey's sovereign immunity privilege nor does it lessen the harms that ensue when that privilege is not acknowledged. First, a State may raise sovereign immunity at any point in a proceeding, Wheeling & Ry. Co. v. Public Util. Comm'n, 141 F.3d 88, 91 (3d Cir. 1998), cert. denied, 528 U.S. 928 (1999), let alone a different proceeding. Further, "a State's sovereign immunity is a personal privilege which it may waive at pleasure." College Sav. Bank v. Florida Prepaid Post Secondary Educ. Expense Bd., 527 U.S. 666, 675 (1999)(citation and quotation omitted). An individual state's waiver of sovereign immunity protection must be clear and unmistakable. Pennhurst State School Hosp. v. Halderman, 465 U.S. 89, 99 (1984).

"Courts indulge every reasonable presumption against waiver" of fundamental constitutional rights. State sovereign immunity, no less than the right to trial by jury in criminal cases, is constitutionally protected." College Sav. Bank, supra, 527 U.S. at 682 (1999)(citations and quotations omitted). Even when a state does consent, it "may withdraw its consent whenever it may suppose that justice to the public requires it." Beers v. Ark., 61 U.S. 527, 529 (1858). As such, it is irrelevant whether New Jersey has consented to federal court jurisdiction in a previous suit or has mechanisms in place to deal with situations where it explicitly

11

waives its privilege. The single relevant fact is that New Jersey does not consent to this one.

Without a stay, State Defendants' property rights are infringed by a private entity without consent, and they will continue to be subjected to litigation as these matters move on to the just compensation phase. See Clean Air Council v. Mallory, 226 F. Supp. 2d 705 (E.D. Pa. 2002)(a state has a special state sovereignty interest in the state's title, control, possession, and ownership of water and land.) Absent a stay, the State Defendants will continue to have to endure litigation by a private party without consent. See Bowers v. NCAA, 188 F. Supp. 2d 473 (D.N.J. 2002)(granting stay pending appeal of determination State University was not protected by sovereign immunity). As such, State Defendants will suffer irreparable harm should the District Court Decision be permitted to stand.

### C. Any Harm to PennEast is Overshadowed By Harm to State Defendants.

As explained above, failure to stay the District Court Decision will continue to subject the State of New Jersey to this Court's jurisdiction without New Jersey's consent and in contravention of the State's constitutionally-protected sovereignty. The Supreme Court has recognized this as an extraordinary harm that warrants an immediate appeal despite there being no final judgment. PennEast, on the other hand, would

potentially only incur monetary losses should a stay of the District Court Decision delay their ability to conduct surveys and ultimately impact their construction schedule. Pappan Enters. v. Hardee's Food Sys., 143 F.3d 800, 805 (3rd Cir. 1998) (explaining that harm is irreparable only if it is "of a peculiar nature, so that compensation in money alone cannot atone for damages" (citation and quotation marks omitted)).

The case law cited by PennEast to support its claim to irreparable harm is inapposite. Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Twp., 768 F.3d 300, 316 (3rd Cir. 2014) is distinguishable as the Third Circuit recognized Columbia's harm as including safety concerns because the pipeline they intended to build was meant to replace an old, aging pipeline already in existence. Moreover, Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres, 709 Fed. Appx. 109 (3rd Cir. 2017), an unpublished per curiam decision, is not binding on this Court and specifically lacks any reasoning for its determination that the pipeline company's alleged financial losses would be irreparable. Certainly, the balance of harms favors State Defendants given the constitutionally-protected rights at issue.

D. **PennEast's Pipeline Project Would Harm the Very Nature of These Public Lands.**

It is disingenuous for PennEast to suggest that their pipeline project will not harm the essential character of the State Preserved Lands. These lands are held for conservation, recreation and farmland preservation purposes. These land interests were purposefully acquired due to unique ecological characteristics that state officials decided warranted the expense of public dollars to preserve in perpetuity. The State Defendants hold enforceable rights that attach to and run with the land and preclude the very development PennEast proposes. The State has invested millions of taxpayer dollars out of the State's treasury for these properties to secure these rights in furtherance of New Jersey Constitutional mandates.

PennEast's project would have these lands cleared, excavated and permanently corrupted with a 36-inch diameter natural gas pipeline. The District Court Decision gives PennEast the permanent property rights necessary to do this. Given the threshold constitutional issues State Defendants have raised, the only way for the public interest to be protected is to stay that decision to allow for the adjudication of State Defendants appeal to the Third Circuit.

## CONCLUSION

For the reasons set forth herein, State Defendants request that this Court issue a stay of the District Court Decision pending resolution of State Defendants' appeal to the Third Circuit.

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY


By: s/ Mark Collier
    Mark Collier (MC6192)
    Deputy Attorney General


Date: February 12, 2019

15